AUSTIN P. NAGEL, ESQ.
California State Bar #118247
LAW OFFICES OF AUSTIN P. NAGEL
111 Deerwood Road, Suite 305
San Ramon, CA  94583
Telephone:  (925) 855-8080
Facsimile:  (925) 855-8090

Attorneys for Secured Creditor,
WELLS FARGO BANK, N.A.,
dba WELLS FARGO DEALER SERVICES

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>JOHN S. METHENY,<br><br>   Debtor.<br>_____/ | Case No. 14-30462 BDM<br>(Chapter 13 Proceeding)<br><br>SECURED CREDITOR, WELLS FARGO BANK, N.A., DBA WELLS FARGO DEALER SERVICES's OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN<br><br>**MEETING OF CREDITORS**:<br>Date:  September 25, 2014<br>Time:  9:00 a.m.<br>Ctrm:  Office of the United States Trustee<br>      235 Pine Street<br>      Suite 850<br>      San Francisco, CA<br>**CONFIRMATION HEARING**:<br>Date:  October 15, 2014<br>Time:  1:00 p.m.<br>Ctrm:  22nd Floor,<br>      235 Pine Street,<br>      San Francisco, CA |

    WELLS FARGO BANK, N.A., DBA WELLS FARGO DEALER SERVICES (hereinafter referred to as "Secured Creditor") objects to confirmation of the Chapter 13 Plan proposed hereunder by Debtor, JOHN S.METHENY (hereinafter referred to as "Debtor") on the following grounds:

1

1. On February 3, 2012, Debtor (as Buyer) entered into a written Retail Installment Sale Contract – Simple Interest Finance Charge (hereinafter referred to as "Security Agreement") with (as Seller) which evidenced Debtor's financed purchase of the 2008 Toyota Prius (Vehicle Identification Number JTDKB20U583350896) (hereinafter referred to as the "property"), which has become the subject of this action. The aforementioned Security Agreement was duly assigned by Hanlees Toyota to Secured Creditor during the normal course of business on or about February 3, 2012.

2. Upon executing the Security Agreement, a true and correct photocopy of which is filed separately herewith and which is incorporated herein by reference, and by subsequently taking possession of the property which was being financed by Secured Creditor, Debtor agreed and became obligated to pay the sum of $12,351.41, with interest accruing at the contract rate of 18.99% per annum, for the financed purchase of the subject property. Further evidence of Secured Creditor's secured position is reflected on the Certificate of Title for the subject property, a true and correct photocopy of which is filed separately herewith and which is incorporated herein by reference.

3. As mandated by 11 U.S.C. § 1325, et seq., the value of Secured Creditor's secured collateral must be the $9,255.87 which was due and owing on Debtor's account with Secured Creditor at the time of the Debtor's filing of the above-captioned case. More specifically, as noted on the prevailing Security Agreement, Secured Creditor has a purchase money security interest securing the debt which is the subject of its claim against Debtor and the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle acquired for the personal use of Debtor.

4. Secured Creditor objects to the $7,400.00 valuation allocated to its secured collateral under Debtor's proposed Plan in that should Secured Creditor be forced to accept the low valuation of its secured claim hereunder, Secured Creditor's security interest will be severely diminished on collateral which already depreciates at a rapid rate during the normal course of its use.

5. Moreover, Secured Creditor objects to the Debtor's classification of its secured claim as one subject to 11 U.S.C. § 506(a) when, in fact, <u>the subject vehicle was purchased by Debtor 782 days prior to their filing of the above-captioned case and, therefore, Secured Creditor's claim is not subject to §506(a)</u>.

6. The Secured Creditor objects to the Plan because the proposed interest rate of 4.50% is less than the guidelines provided in <u>Till vs. SCS Credit Corp</u>. 541 U.S. 465, 124 SCt 1951, 158 L.Ed. 2d 787 (2004) (In re Till). In the <u>Till</u> case, the Supreme Court found that the appropriate rate of interest when a debtor is "cramming down" the value of collateral pursuant to 11 U.S.C. Section 1325(a)(5)(B)(ii) is the "prime-plus" or "formula rate" which augments the national prime rate to account for the risk of nonpayment by the debtor. The Supreme Court refused to determine the proper scale for risk adjustment, but noted that other courts have approved adjustments of 1.5% to 3%. The Prime Rate was 3.25% at the time the Debtor filed this case.

7. Secured Creditor believes that if it is forced to accept its inclusion under Debtor's Plan as is presently proposed, Secured Creditor will be prejudiced by its position thereunder and Secured Creditor will continue to suffer substantial, mounting losses.

///

///

///

3

WHEREFORE, SECURED CREDITOR RESPECTFULLY MOVES:

1. That, based upon the risk factors set forth more fully above, as well as others that may exists, confirmation of this Chapter 13 Plan be denied; or, in the alternative,

2. That Debtor's Plan hereunder be amended in order to allow Secured Creditor to receive the fully secured sums that are due and owing to it. More specifically, the replacement value to Debtor of the property should be set at $9,255.87;

3. That Secured Creditor's secured claim accrue interest at the fair market rate of 6.25% per annum.

Dated: September 5, 2014          LAW OFFICES OF
AUSTIN P. NAGEL

   /s/ Austin P. Nagel
Attorneys for Secured Creditor,
WELLS FARGO BANK, N.A.,
dba WELLS FARGO DEALER SERVICES

WDSBK.10